## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| RAECHELLE JANZEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | NO. CIV-11-70-D |
| | ) | |
| WATONGA HOSPITAL TRUST | ) | |
| AUTHORITY A/K/A WATONGA | ) | |
| MUNICIPAL HOSPITAL, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>ORDER</u>

Before the Court is Defendant Roland Gee's Partial Motion to Dismiss [Doc. No. 17], seeking dismissal of several claims asserted against him in the Complaint. Plaintiff timely responded to the motion, and Defendant filed a reply.

<u>Background:</u>

Plaintiff is a former employee of Watonga Municipal Hospital ("Hospital"). Following the termination of her employment as a data entry clerk, she filed this lawsuit in which she asserts fourteen claims for relief against five defendants, including Roland Gee ("Mr. Gee"), who was the Hospital's interim administrator at the time of Plaintiff's termination. Mr. Gee is named as a defendant in Counts VII, VIII, IX, XI, and XII. These counts assert, respectively, a 42 U. S. C. § 1983 civil rights claim alleging a violation of First Amendment rights; a § 1983 claim alleging a violation of equal protection rights; a claim asserting interference with rights under the Family Medical Leave Act and retaliation for the exercise of those rights; a claim for tortious interference with an employment/business relationship; and a claim for intentional infliction of emotional distress.

Mr. Gee seeks dismissal of the claims based on the First and Fourteenth Amendment, tortious interference, and intentional infliction of emotional distress.  He contends that, pursuant to Fed. R. Civ. P. 12(b)(6), the allegations in the Complaint are insufficient to state a plausible claim for relief on those causes of action.

In her response, Plaintiff expressly dismisses her First Amendment claim against Mr. Gee. Accordingly, the Court need not address this claim, and Count VII of the Complaint is dismissed as to Mr. Gee.  In response to Mr. Gee's other arguments, Plaintiff contends the Complaint is adequate to withstand a motion to dismiss.  In the alternative, she seeks leave to amend to cure any deficiencies in the allegations.

Rule 12(b)(6) standards:

To avoid dismissal pursuant to  Rule 12(b)(6), a complaint "must contain enough factual allegations 'to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *Robbins v. Oklahoma*, 519 F. 3d 1242, 1247 (10th Cir. 2008); *VanZandt v. Oklahoma Dept. of Human Services*, 276 F. App'x 843, 846 (10th Cir. 2008) (unpublished opinion).

To state a plausible claim, "the Plaintiff has the burden to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *VanZandt*, 276 F. App'x at 846 (quoting *Robbins*,  519 F. 3d at 1247.)  "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U. S. at 555.  Thus,  plaintiffs  must allege sufficient facts to "nudge[ ] their claims across the line from conceivable to plausible." *Id.* at 570; *Robbins*, 519 F. 3d at 1247.  The "mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court

reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F. 3d 1174, 1177 (10th Cir. 2007) (emphasis in original).  Although the Court must construe well-pleaded facts as true, not all factual allegations are "entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950 (2009).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'"  *Id.*  The Court need not accept as true the assertions in a complaint which "amount to nothing more than a 'formulaic recitation of the elements'" of a claim. *Iqbal,* 556 U.S. at __, 129 S. Ct. at 1951 (quoting *Twombly*, 550 U.S. at 554-555).

> When reviewing a Rule 12(b)(6) motion to dismiss, "we look for plausibility in the complaint." *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir.2007) (internal quotation marks and brackets omitted). "In particular, we look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." Id. (internal quotation marks omitted). "Rather than adjudging whether a claim is 'improbable,' '[f]actual allegations [in a complaint] must be enough to raise a right to relief above the speculative level.'" *Id.* (alterations in original) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)).

*Marshall v. Morton,*  2011 WL 1549516, at *4 (10th Cir. April 26, 2011) (unpublished opinion).

> "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). The complaint need not recite "detailed factual allegations, but the factual allegations must be enough to raise the right to relief above the speculative level." *Hall v. Witteman*, 584 F.3d 859, 863 (10th Cir.2009) (internal quotation marks omitted).

*Matthews v. LaBarge, Inc.,*  407 F. App'x. 277, 280 (10th Cir. 2011) (unpublished opinion).

Application:

The sufficiency of Plaintiff's allegations against Mr. Gee is best determined in the context of her allegations regarding the termination of her employment.  In summary, she contends that she

was employed by the Hospital as a data entry clerk in 2007[1] and was terminated on or about June 7, 2010.  According to Plaintiff, she worked an eight-hour shift from Monday through Friday, and did not receive any formal written disciplinary action during her employment.

On or about February 7, 2008, Plaintiff sustained injuries to her cervical spine and head when she fell from her chair at work.  Complaint ¶ 18.  As a result, she had surgery in February of 2009, and was on medical leave for approximately seven weeks; she underwent a second surgery in January of 2010, and returned from medical leave on or about March 30, 2010.  *Id.* at ¶¶ 19 and 20.  During Plaintiff's second medical leave, Sherry Gee ("Ms. Gee") was hired as the Hospital's office manager and became Plaintiff's supervisor.[2]  After Plaintiff returned to work, Ms. Gee directed her to pick up the Hospital's mail from the Post Office, a new job duty which required lifting and carrying large, heavy containers.  According to Plaintiff, performing those tasks placed extreme strain on her cervical spine and neck, and thus compromised her physical condition.  Complaint ¶¶ 21-22.  She consulted with her physician, who said she should not perform such tasks.  When she informed Ms. Gee of her physician's comments, Ms. Gee "became frustrated and walked off."  *Id.* at ¶ 23.

In May of 2010, Ms. Gee asked Plaintiff to work at the Hospital registration desk on nights and weekends; Plaintiff contends Ms. Gee knew Plaintiff was unable to do so  because she cared for her husband, "who suffers from heart disease and is terminally ill."  She also alleges that Ms. Gee knew other employees were able to work during these time periods.  Plaintiff alleges that, on June

---

[1] Plaintiff also alleges that she was previously employed by the Hospital from 1978 until 1989, when she voluntarily resigned.  She does not assert any allegations related to her previous employment at the Hospital.

[2] Plaintiff does not allege that Sherry Gee and Mr. Gee are related, and she does not dispute Mr. Gee's statement that they are not related.

4, 2010, Human Resources Representative Tim Predieri ("Mr. Predieri") told Plaintiff her data entry position was being reduced to a part-time position, and she would have to accept the additional evening and weekend position if she wanted to maintain a 40-hour work week. Ms. Gee allegedly refused Plaintiff's request to remain in the data entry position only on a part-time basis. Complaint ¶¶ 24-28. Plaintiff then met with Mr. Predieri, and asked to remain in the data entry position on a part-time basis; she told him she believed she was "being retaliated against," but "no remedial action was taken." *Id.* at ¶¶ 29-30. According to Plaintiff, Mr. Predieri "called Mr. Gee to his office and informed Mr. Gee of Plaintiff's complaint," and "Mr. Gee became visibly angry, telling Predieri that they needed to discuss the matter outside Plaintiff's presence." *Id.* at ¶¶ 30-31.

Plaintiff alleges that she was later called to Mr. Predieri's office, where she was asked to sign an allegedly false document memorializing their earlier meeting. According to Plaintiff, she was terminated when she refused to sign the document. She also alleges she was replaced by a younger, non-disabled individual, and Plaintiff was not paid the full amount of wages owed to her upon her termination. Complaint ¶¶ 31-34.

The Complaint contains few references to Mr. Gee. Plaintiff alleges that Mr. Gee became the Interim Administrator of the Hospital in 2009, and held that position at the time of her termination. Complaint ¶ 12. She also includes Mr. Gee in the paragraph alleging that the "Board of Directors, Dr. Richard Carter, Roland Gee and other of her male superiors consistently displayed degrading attitudes toward Plaintiff and other women in the workplace," and asserts that she and other female employees "were consistently talked down to and demeaned, unlike the manner in which such individuals treated their male peers." *Id.* at ¶¶ 15-16. Otherwise, the only mention of Mr. Gee is in paragraphs 30 and 31 of the Complaint, which allege that Mr. Predieri called Mr. Gee

to his office when Plaintiff asked to remain in her position on a part-time basis and that Mr. Gee became angry and left.

Equal protection claim:

In Count VIII of the Complaint, Plaintiff asserts an equal protection claim against "all Defendants." She incorporates her prior allegations by reference, and then alleges that all named defendants were public employees who, acting under color of their authority, used that authority in "a manner which deprived Plaintiff of his[sic] constitutional right to equal protection." Complaint ¶ 68.  According to Plaintiff:

> Plaintiff's Fourteenth Amendment constitutional right to equal protection was clearly established at the time of the actions in question.  The actions of the Defendants were in deliberate indifference to the constitutional rights of the Plaintiff.  Therefore, the individually-named Defendants are liable for the actions taken in violation of such rights in accordance with 42 U. S. C. § 1983.

Complaint ¶ 69.  Plaintiff alleges the "actions listed" have caused her physical, mental and emotional injury and, to the extent the actions are deemed willful or deliberately indifferent, she may recover punitive damages.  *Id.* at ¶¶ 70, 71.

The Complaint contains no factual allegations identifying the actions allegedly taken by Mr. Gee which support an equal protection claim.  As noted above, the Complaint mentions Mr. Gee in only a few paragraphs; however, Plaintiff does not attempt to explain how those limited references allegedly support an equal protection violation by Mr. Gee.   Furthermore, Plaintiff alleges no facts to show that Mr. Gee had any role in the actions which she contends were discriminatory, retaliatory, or in violation of her equal protection rights.  Instead, the Fourteenth Amendment claim is asserted collectively against all defendants.

Plaintiff's allegations are inadequate to state a claim for relief based on § 1983.  *Robbins*

*v. State*, 519 F. 3d 1242 (10th Cir. 2008).  In *Robbins*,  the Tenth Circuit applied the *Twombly*

plausibility pleading requirements to a § 1983 claim for relief.  According to the Circuit,  in § 1983

cases, specific factual allegations are essential because  "state actors may only be held liable under

§ 1983 for their *own* acts."  *Robbins*, 519 F. 3d at 1251. (emphasis added).  As the Circuit

concluded:

> Therefore it is particularly important in such circumstances that the complaint make
> clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual
> with fair notice as to the basis of the claims against him or her, as distinguished from
> collective allegations against the state.

*Robbins*, 519 F. 3d at 1250 (emphasis in original).  Furthermore, the Circuit expressly held

allegations that several defendants collectively engaged in certain specific conduct was insufficient

to state a plausible claim for relief under § 1983:

> Given the complaint's use of either the collective term "Defendants" or a list of the
> defendants named individually but with no distinction as to what acts are attributable
> to whom, it is impossible for any of these individuals to ascertain what particular
> unconstitutional acts they are alleged to have committed.

*Robbins*, 519 F. 3d at 1250.  Thus, the Circuit held that the allegations failed to satisfy both the

*Twombly* plausibility requirements and the fair notice pleading requirements of Fed. R. Civ. P. 8.

*Id.* at 1250-51.

In this case, Plaintiff's allegations in support of her Count VIII claim wholly fail to satisfy

the pleading requirements of Rule 12(b)(6) and Rule 8 as announced in *Robbins*.  Plaintiff fails to

identify specific acts allegedly attributable to *any* individual defendant,[3] and includes no factual

allegations identifying any action by Mr. Gee which allegedly violated her equal protection rights.

Her conclusory allegations are insufficient, and Mr. Gee's motion to dismiss Count VIII is granted.

---

[3]After briefing on Mr. Gee's motion was completed, Plaintiff dismissed her claims against Richard S. Carter, M.D., the only other individual defendant named in these claims.  She also dismissed Medstone Group, LLC.

Because Plaintiff seeks leave to amend to cure this deficiency, the Court must consider whether leave is appropriate.   Pursuant to Fed. R. Civ. P. 15, leave to amend should be freely given "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  However, such leave is not automatic and may be precluded by various factors, including  futility.  *Foman v. Davis*, 371  U.S. 178, 182 (1962).  Where the court dismisses a cause of action for failure to state a claim, it may exercise its discretion to allow an amended complaint to cure the deficiency in the original complaint; however, it is not required to do so if the circumstances and the governing law render an amendment futile. *E.SPIRE Communications, Inc. v. New Mexico Public Regulation Comm'n*, 392 F. 3d 1204, 1211 (10th Cir. 2004); *Bauchman for Bauchman v. West High School*, 132 F.3d 542, 559 (10th Cir. 1997).

Because Plaintiff's allegations in support of her equal protection claim are factually deficient, it is unclear whether Plaintiff seeks to assert her claim under a "class of one" theory or a contention that her termination resulted from unlawful discrimination and retaliation based on her membership in the protected classifications of disability, age, or gender.  In either case, however, Plaintiff cannot assert a viable equal protection claim.

The Supreme Court has expressly held that a public employee may not assert an Equal Protection Clause claim based on a 'class of one' theory.  *Engquist v. Oregon Dept. of Agriculture*, 553 U.S. 591, 598 (2008).  As the Court explained, the 'class of one' theory has been advanced where a public employee claims employment discrimination, but does not allege class-based discrimination; instead the employee "claims that she has been irrationally singled out as a so-called 'class of one.'" *Id.* at 601.  The Court rejected the viability of that theory, concluding "the class-of-one theory of equal protection has no application in the public employment context."  *Id.* at 607.

Following *Engquist,* the Tenth Circuit Court of Appeals also expressly rejected an equal

protection claim based on a "class of one" theory. *Kelley v. City of Albuquerque,* 542 F. 3d 802, 822-23 (10th Cir. 2008). Accordingly, Plaintiff in this case cannot state a claim for relief on that basis, and amending the Complaint to do so would be futile.

Plaintiff's response to the motion to dismiss suggests that she bases her equal protection claim on the contention she was subjected to discriminatory conduct in violation of federal and state law because she qualifies for the protected classes of disability, age, or gender. However, the Tenth Circuit Court of Appeals has expressly rejected the viability of an equal protection claim based on a plaintiff's contention that her employer violated state and federal law prohibiting retaliation for the exercise of statutorily protected rights. *Teigen v. Renfrow,* 511 F. 3d 1072, 1085-86 910th Cir. 2007); *Davoll v. Webb,* 194 F. 3d 1116, 1145-46 (10th Cir. 1999); *Welsh v. City of Tulsa,* 977 F. 2d 1415, 1420 (10th Cir. 1992).

In this case, Plaintiff asserts numerous claims based on violations of state or federal laws prohibiting employment discrimination and retaliation for the exercise of statutorily protected rights. She alleges the Hospital and the City of Watonga ("City") violated the Americans with Disabilities Act, the Oklahoma Anti-Discrimination Act, the Age Discrimination in Employment Act, and Title VII of the Civil Rights Act of 1964 by discriminating and/or retaliating against her because of her disability, her age, and her gender. Complaint, Counts I, II, III, IV, and VI. She also alleges those defendants and Mr. Gee violated the federal Family Medical Leave Act by interfering with her rights under the Act and by retaliating against her for exercising those rights. *Id.* at Count IX. Additionally, she contends the Hospital and the City unlawfully retaliated against her because she exercised rights under Oklahoma's Workers Compensation statutes, thereby violating recognized state law. Complaint at Count X. In addition to her assertion of rights under these federal and state

laws, she alleges in Count VIII that the same conduct forming the basis for those allegations also constitutes a violation of her equal protection rights.

According to the Tenth Circuit, Plaintiff cannot present a viable equal protection claim under these circumstances.  As the Circuit explained in *Teigen,* an employer's challenged policy may "run afoul of state or federal laws that prohibit employers from retaliating against employees who exercise certain statutory rights."  *Teigen*, 511 F. 3d at 1085.  While such potential violations may support specific federal or state claims, they do *not* support an equal protection claim:

> In such circumstances, however, the proper claim is not an equal protection claim brought in federal court, but a claim under the applicable anti-retaliation law brought in the forum designated to redress such harm.  *The mere illegality of a retaliatory action under a separate body of law does not make the resulting classification so illegitimate, irrational, or arbitrary as to violate the Equal Protection Clause.*

*Id.* at 1085-86 (emphasis added).   "If this court were to hold otherwise, every claim of unlawful retaliation against a government employer, whether brought under state or federal law, could be transformed into an equal protection claim simply by defining the relevant class as consisting of those employees who challenged the government's unlawful employment policies."  *Id.*

Plaintiff's allegations of unlawful discrimination and retaliation in violation of federal and state law provide her statutory remedies.  That she contends she was a member of  statutorily protected classifications based on her alleged disability, age, or gender does not, however,  support an equal protection claim under these facts.  Amending the Complaint to attempt to plead an equal protection claim on this basis would thus be futile.

Accordingly, Plaintiff's request to amend regarding the dismissed Count VIII is denied on futility grounds.

Tortious Interference claim:

In Count XI of the Complaint, Plaintiff alleges Mr. Gee, MedStone Group, LLC and Richard

S. Carter, M.D. are liable for tortious interference.  Plaintiff incorporates by reference the preceding allegations in the Complaint, and then alleges:

> The above-described acts constitute an unlawful interference with an employment/business relationship.  Defendants' actions were malicious and caused harm to Plaintiff.  Defendants had no justification, excuse or privilege for such interference.

Complaint ¶ 85.  She also alleges the conduct was "willful, wanton, or in reckless disregard of Plaintiff's rights," thus entitling her to recover punitive damages.  *Id.* at ¶ 86.   Although she incorporates by reference all prior allegations in the Complaint, as the Court noted, *supra*, Mr. Gee is mentioned only a few times in those allegations.  Those allegations are limited to stating that he served as Interim Administrator of the Hospital, that he and other males displayed degrading attitudes toward women, that he was called to Mr. Predieri's office in June 2010, and that he angrily left that office.

Although Oklahoma recognizes a cause of action for tortious interference with a  contract, that cause of action "can arise only when one who is not a party to a contract interferes with that contract by convincing one of the contracting parties to breach its terms." *Ray v. American Nat'l Bank & Trust Co. of Sapulpa*, 894 P. 2d 1056, 1060 (Okla. 1994).  Oklahoma has held that a terminated employee can pursue a claim for interference with an employment contract.  *See, e.g., Martin v. Johnson*, 975 P. 2d 889 (Okla. 1998).

In this case,  Plaintiff does not allege that she had a written employment contract.  She concedes she was an employee at will.  However, Plaintiff does not describe her claim as interference with a *contract*; instead, she labels her cause of action as based on tortious interference with a "business relationship" or with "economic relations."   As she suggests, Oklahoma courts have recognized that a tortious interference claim may be asserted on those bases, even in the absence of a written contract.  *See, e.g., Waggoner v. Town & Country Mobile Homes, Inc.*, 808 P.

2d 649 (Okla. 1990); *Green Bay Packaging, Inc. v. Preferred Packaging, Inc.*, 932 P. 2d 1091(Okla. 1996).

The Oklahoma Court of Appeals has held that "there is nothing to suggest that the tort would not apply in cases of interference with an at-will contract of employment when the party interfering acts without privilege." *McNickle v. Phillips Petroleum Co.*, 23 P. 3d 949, 952 (Okla. Civ. App. 2001). However, Oklahoma decisions recognizing a tortious interference claim in the employment context have not expressly held an employee can assert such a claim against a supervisor. As a general rule, a supervisor or employee acting as an agent of the employer cannot be liable for tortious interference with the employer's contract with another employee. *Martin v. Johnson*, 975 P.2d 889, 896 (Okla.1998). There is, however, an exception to this rule which applies if the supervising employee "acts in bad faith and contrary to the interests of the employer." *Id.* at 896-97. Where the alleged contract interference is based on the claim that the interfering employee engaged in unlawful discrimination, he may be liable for tortious interference because such conduct would constitute bad faith. *Eapen v. McMillan*, 196 P.3d 995, 998 (Okla.Civ.App.2008).

The Oklahoma Court of Civil Appeals has held that, under some circumstances, an at-will employee may state a cognizable claim for tortious interference with economic relations against her supervisor.[4]  *See Fulton v. People Lease Corp.*, 241 P.3d 255 (Okla. Civ. App. 2010). More specifically, the court concluded that, where a supervisor's actions are not in good faith and result in an at-will employee's termination, the employee may assert a claim against the supervisor based on tortious interference with the employee's business relations. *Id.* at 265. Relying on *Martin* and *Eapen*, the *Fulton* court reasoned that, where the supervisor acts in bad faith, he is not acting in the employer's interest in the context of the relationship at issue. *Id.*

---

[4]The *Fulton* court expressly rejected claims seeking to hold the supervisor liable under Title VII and *Burk*, finding there is no individual supervisor liability under either cause of action. *Fulton*, 241 P. 3d at 261-62.

To state a claim for tortious interference with a business or employment relationship, however, a plaintiff must plead facts to show that 1) the plaintiff had a business right with which the defendant interfered; 2) the interference was malicious and wrongful and was not justified, privileged, or excusable; and 3) the plaintiff incurred damages proximately caused by the wrongful interference. *Gabler v. Holder and Smith, Inc.*, 11 P. 3d 1269, 1278 (Okla. 2000).

Plaintiff's allegations, as currently drafted, do not satisfy these requirements. The allegations are purely conclusory and amount to nothing more than a recitation of the elements of this cause of action. Such allegations are insufficient. *See, e.g., Iqbal*, 556 U.S. at __; 129 S. Ct. at 1951. It is not clear what action Plaintiff contends Mr. Gee took which allegedly interfered with her employment relationship with the Hospital, and her allegations of tortious interference are asserted collectively against Mr. Gee, Medstone and Dr. Carter. Accordingly, the motion to dismiss must be granted.

The Court concludes, however, that Plaintiff should be authorized to amend the Complaint and attempt to cure the pleading deficiencies. While the Court is not bound by the decision in *Fulton*,[5] that decision is not inconsistent with the Oklahoma Supreme Court decision in *Martin*. Thus, the Court cannot conclude at this stage of the litigation that it would be futile to permit Plaintiff to amend Count XI. *See Wright v. KIPP Reach Academy Charter School*, 2011 WL 1752248, at *5 (W. D. Okla. May 6, 2011) (unpublished opinion). Accordingly, Plaintiff's request for leave to amend the tortious interference claim is granted.

Intentional Infliction of Emotional Distress claim:

In Count XII, Plaintiff alleges "all Defendants" are liable for the common law tort of intentional infliction of emotional distress. She contends the "conduct of Defendants was extreme

---

[5]Decisions of a state's intermediate appellate courts are not binding on federal courts. *Teigen v. Renfrow*, 511 F. 3d 1072, 1082 (10th Cir. 2007).

and outrageous and done with the intention of causing or with reckless disregard of causing Plaintiff severe emotional distress," and Plaintiff in fact suffered such distress.  Complaint ¶ 88.

Under Oklahoma law, an action for intentional infliction of emotional distress will lie only where there is extreme and outrageous conduct coupled with severe emotional distress.  *Gaylord Entertainment Co. v. Thompson,* 958 P.2d 128, 149 ( Okla. 1988).  To prevail on this claim,  plaintiff must plead and prove *facts* to show that: (1) defendant acted intentionally or recklessly;   (2) defendant's conduct was extreme and outrageous; (3) plaintiff actually experienced emotional distress; and (4)  the emotional distress was severe.  *Daemi v. Church's Fried Chicken, Inc.*, 931 F.2d 1379, 1387 (10th Cir.1991).  In Oklahoma, "[r]ecovery under the theory is governed by very narrow standards."  *Miner v. Mid-America Door Co.*, 68 P. 3d 212, 223 (Okla. Civ. App. 2002). Regarding the element of  extreme or outrageous conduct, a plaintiff must plead facts to show the defendant's conduct was "'beyond all possible bounds of decency in the setting in which it occurred,' or 'utterly intolerable in a civilized community.'" *Thompson v. State Farm Fire & Casualty Co.*, 34 F.3d 932, 934 (10th Cir. 1994) (quoting *Eddy v. Brown*, 715 P.2d 74, 77 (Okla. 1986)).  In Oklahoma, liability for this tort "does not extend to 'mere insults, indignities, threats,...[or] occasional acts that are definitely inconsiderate and unkind.'" *Starr v. Pearle Vision, Inc.*, 54 F. 3d 1548, 1558 (10th Cir. 1995) (quoting *Eddy*, 715 P. 2d at 77).

In this case, the Complaint fails to satisfy *Twombly's* pleading requirements because it presents only conclusory allegations which merely recite the elements of the cause of action, and such allegations are insufficient.  *Twombly*, 550 U.S. at 555.  Accordingly, Count XII must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

In her response brief, Plaintiff argues that the loss of employment is sufficient to constitute the outrage required to support this contention.   Response at page 9.  However, Oklahoma has

rejected the contention that loss of employment is sufficient to support a claim of intentional infliction of emotional distress. "Although it is natural that an employee would suffer some sort of distress from being terminated," that is not, in itself, sufficient to support the extreme and outrageous conduct required to pursue this tort. *Smith v. Farmers Co-op. Ass'n of Butler,* 825 P. 2d 1323, 1328 (Okla. 1992).

Plaintiff also incorrectly argues that the validity of the claim must be determined by a jury. Whether the alleged conduct may reasonably be regarded as sufficiently extreme and outrageous to satisfy these standards is a question of law for the court. *Gaylord,* 958 P. 2d at 149. "It is the trial court's responsibility initially to determine whether the defendant's conduct may reasonably be regarded as sufficiently extreme and outrageous." *Id.* Thus, "the 'court, in the first instance, must determine whether the defendant's conduct *may* reasonably be regarded *so extreme and outrageous* as to permit recovery.'" *Mizraie v. Smith Cogeneration, Inc.,* 962 P. 2d 678, 682 (Okla. Civ. App. 1998) (emphasis in original) (quoting *Breeden v. League of Services Corp.,* 575 P. 2d 1374, 1377 (Okla. 1978)). Conduct which, though unreasonable, is not "beyond all possible bounds of decency" in the setting in which it occurred, or cannot be "regarded as utterly intolerable in a civilized community," falls short of having actionable quality. *Ishmael v. Andrew,* 137 P. 3d 1271, 1277 (Okla. Civ. App. 2006) (citing *Eddy*, 715 P. 2d at 76); *Gaylord,* 58 P. 2d at 149.

In reviewing Plaintiff's Complaint to determine whether it would be futile to authorize an amendment to cure the deficient allegations, the Court notes that Oklahoma has repeatedly rejected claims of intentional infliction of emotional distress in an employment setting. Thus, an employee did not allege facts sufficient to constitute intentional infliction of emotional distress where he alleged his supervisor harshly criticized him, and yelled and cursed at him in front of others.

15

*Merrick v. Northern Natural Gas Co.,* 911 F. 2d 426, 432 (10th Cir. 1990) (applying Oklahoma law). Similarly deficient were allegations based on the employer's accusing an employee of criminal acts, requiring him to take a polygraph examination, and subjecting him to ridicule and abuse at company seminars. *Daemi,* 931 F. 2d at 1388. Insufficient facts to support the tort were also noted where a plaintiff alleged a female supervisor described, during a meeting, how sexual favors could be used to obtain business, used profanity in front of customers, made lewd remarks about the plaintiff, and openly made sexual comments in the presence of co-workers. *Anderson v. Oklahoma Temporary Services, Inc.*, 925 P. 2d 574, 576 (Okla. 1996). Also deemed insufficient were allegations that the employer telephoned the plaintiff in the middle of the night and browbeat him for hours, required him to do unnecessary work, and made derogatory sexual comments about his fiancee. *Mirzaie,* 962 P. 2d at 682-683.

In this case, other than the fact that her employment was terminated, the only factual basis for Plaintiff's claim that Mr. Gee intentionally caused her emotional distress is her allegation that he became angry during a meeting. Even if she were to amend to allege with specificity his purportedly degrading comments to female employees, *see* Complaint at paragraphs 15 and 16, the foregoing Oklahoma decisions establish that such contentions are generally insufficient to support this tort action.[6]

Accordingly, the Court concludes that it would be futile to allow an amendment to cure the deficiencies in Plaintiff's allegation that Mr. Gee is liable for the tort of intentional infliction of

---

[6]Plaintiff's reliance on *Joffe v. Vaughn,* 873 P.2d 299, 303 (Okla.Civ.App.1993) is misplaced, as the facts of that case are clearly distinguishable from those she asserts. In *Joffe,* the defendants terminated a television co-anchor based on unsubstantiated reports of homosexual activity, resulting in his suicide. The defendants refused to disclose the source of their information or to investigate its accuracy; instead, they relied on allegtions that were not credible; after the co-ancher committed suicide, his estate filed suit.

emotional distress. The motion to dismiss Count XII is thus granted, and leave to amend is denied.

Conclusion:

For the foregoing reasons, Defendant Roland Gee's motion [Doc. No. 17] to dismiss Counts VII, VIII, IX, XI, and XII is GRANTED.  Leave to amend is denied as to all counts except Count XI.

Plaintiff's amended complaint shall be filed no later than 20 days from the date of this Order, and Defendants shall respond according to the deadlines set forth in the Federal Rules of Civil Procedure.

IT IS SO ORDERED this 8th day of November, 2011.

TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE